FILED

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2006 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>ZIAULLAH LALLI, aka Zia<br>Lalli, and<br>AHMAD NAJIB WARDAK, aka<br>Najib Wardak, aka<br>Najeeb Wardak,<br><br>        Defendants. | CR 07-00276<br><br>I N D I C T M E N T<br><br>[21 U.S.C. §§ 846, 841(a)(1):<br>Conspiracy to Possess with Intent<br>to Distribute and to Distribute<br>Cocaine; 21 U.S.C. § 841(a)(1):<br>Distribution of Cocaine; 21<br>U.S.C. § 853: Criminal<br>Forfeiture] |

The Grand Jury charges:

COUNT ONE

[21 U.S.C. §§ 846, 841(a)(1)]

A.  OBJECT OF THE CONSPIRACY

Beginning on a date unknown, and continuing to on or about May 6, 2002, in Los Angeles County, within the Central District of California, and elsewhere, defendants ZIAULLAH LALLI, also known as ("aka") Zia Lalli ("LALLI"), and AHMAD NAJIB WARDAK, aka Najib Wardak, aka Najeeb Wardak ("WARDAK"), and others known and

1  unknown to the Grand Jury, conspired and agreed with each other
2  to knowingly and intentionally (a) possess with intent to
3  distribute, and (b) distribute more than 500 grams of a mixture
4  or substance containing a detectable amount of cocaine, a
5  Schedule II controlled substance, in violation of Title 21,
6  United States Code, § 841(a)(1).

7  B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE
8       ACCOMPLISHED

9       The objects of the conspiracy were to be accomplished in
10 substance as follows:

11      1.   Unindicted co-conspirator Zalmai Ibrahimi ("Ibrahimi"),
12 residing in Maryland, would telephonically introduce a
13 confidential informant to defendant WARDAK, explaining that
14 defendant WARDAK could provide the confidential informant with
15 illegal drugs.

16      2.   Defendants WARDAK and LALLI would meet with the
17 confidential informant in Los Angeles to discuss selling cocaine
18 to the confidential informant.

19      3.   Defendant WARDAK and the confidential informant would
20 negotiate the terms of a cocaine transaction.

21      4.   Defendant WARDAK would arrange for defendant LALLI to
22 provide the cocaine for the transaction.

23      5.   Defendant LALLI would cause an unknown person to deliver
24 approximately one kilogram of cocaine to the confidential
25 informant in Los Angeles.

26      6.   Defendant WARDAK would collect $17,500 in cash from the
27 confidential informant as payment for the kilogram of cocaine,
28

- 2 -

1 and an additional $4,000 in cash as a broker's fee.

2    7.   After the conclusion of the transaction, unindicted co-
3 conspirator Ibrahimi would receive a brokerage fee for arranging
4 the introduction and facilitating the transaction.

5    C.   OVERT ACTS

6    In furtherance of the conspiracy and to accomplish the
7 objects of the conspiracy, defendants WARDAK and LALLI, and
8 others known and unknown to the Grand Jury, committed various
9 overt acts within the Central District of California and
10 elsewhere, including but not limited to the following:

11    1.   In or about March, 2002, unindicted co-conspirator
12 Ibrahimi, living in Maryland, made a telephone call to defendant
13 WARDAK and put the confidential informant on the phone, in order
14 to introduce the confidential informant to defendant WARDAK.

15    2.   On or about April 1, 2002, defendants WARDAK and LALLI
16 met with the confidential informant in Brentwood, California, to
17 discuss a proposed sale of illegal drugs to the confidential
18 informant, in exchange for cash and/or stolen jewelry.

19    3.   On or about April 1, 2002, at the meeting in Brentwood,
20 defendant WARDAK told the confidential informant that defendant
21 LALLI was in a position to sell him cocaine, marijuana, and
22 heroin.

23    4.   On or about April 1, 2002, at the meeting in Brentwood,
24 defendant LALLI offered to introduce the confidential informant
25 to a woman who could help the confidential informant obtain large
26 amounts of cocaine in Tijuana, Mexico.

27    5.   On or about April 2, 2002, defendant WARDAK met with

28

- 3 -

1 the confidential informant at a restaurant in Northridge,
2 California, to discuss the proposed drug transaction.

3    6.   On or about April 3, 2002, defendant LALLI met with the
4 confidential informant at a sandwich shop in Northridge,
5 California, to discuss the proposed drug transaction.

6    7.   Between on or about April 20 and April 22, 2002,
7 defendant WARDAK negotiated the terms of the drug transaction by
8 telephone with the confidential informant, agreeing that the
9 confidential informant would purchase one kilogram of cocaine for
10 $17,500 in cash, with an additional $4,000 to be paid to
11 defendant WARDAK as a broker's fee.

12   8.   On or about April 23, 2002, at approximately 4:30 p.m.,
13 defendant WARDAK met with the confidential informant at a market
14 on Reseda Boulevard in Northridge, California, and advised the
15 confidential informant that although defendant WARDAK did not yet
16 have the cocaine, he would call defendant LALLI to obtain it.
17 Defendant WARDAK told the confidential informant to come back at
18 7:30 p.m.

19   9.   On or about April 23, 2002, at approximately 7:30 p.m.,
20 defendant WARDAK met with the confidential informant at the
21 market on Reseda Boulevard in Northridge and again told the
22 confidential informant that he did not have the cocaine.

23   10.  On or about April 23, 2002, unindicted co-conspirator
24 Ibrahimi told the confidential informant over the telephone that
25 he would call defendant WARDAK and attempt to facilitate the
26 cocaine transaction.

27   11.  On or about April 23, 2002, at approximately 9:15 p.m.,
28

- 4 -

1 | defendant WARDAK called the confidential informant and told him
2 | to come back to the market to get the cocaine.

3 |     12. On or about April 23, 2002, at approximately 9:44 p.m.,
4 | defendant WARDAK met the confidential informant at the market and
5 | advised the confidential informant that an individual who worked
6 | for defendant LALLI would bring the cocaine.

7 |     13. On or about April 23, 2002, at approximately 10:00
8 | p.m., defendant LALLI caused an unknown co-conspirator to drive a
9 | Chevrolet Tahoe to a parking lot near the market, in order to
10 | deliver approximately one kilogram of a mixture or substance
11 | containing cocaine.

12 |     14. On or about April 23, 2002, at approximately 10:30
13 | p.m., in the parking lot next to the market on Reseda Boulevard,
14 | Northridge, California, defendant WARDAK gave the confidential
15 | informant the kilogram of cocaine, in exchange for $21,500 in
16 | U.S. currency.

17 |     15. On or about April 29, 2002, unindicted co-conspirator
18 | Ibrahimi told the confidential informant that he wanted to be
19 | paid a brokerage fee of $3,500.

20 |     16. On or about May 2, 2002, in Laurel, Maryland,
21 | unindicted co-conspirator Ibrahimi met with the confidential
22 | informant and received a brokerage fee of $3,500 U.S. currency.

23 |     17. On or about May 6, 2002, defendant WARDAK told the
24 | informant that defendant WARDAK had paid defendant LALLI an extra
25 | $1,500 for having acquired the kilogram of cocaine so quickly.

- 5 -

COUNT TWO

[21 U.S.C. § 841(a)(1)]

On or about April 23, 2002, in Los Angeles County, within the Central District of California, defendants ZIAULLAH LALLI, also known as ("aka") Zia Lalli, and AHMAD NAJIB WARDAK, aka Najib Wardak, aka Najeeb Wardak, knowingly and intentionally distributed more than 500 grams, that is, approximately 926.6 grams, of a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT THREE

[21 U.S.C. § 853]

1.    Pursuant to Title 21, United States Code, Section 853, defendants ZIAULLAH LALLI, also known as ("aka") Zia Lalli, and AHMAD NAJIB WARDAK, aka Najib Wardak, aka Najeeb Wardak, shall forfeit to the United States the following property:

        a.    All right, title, and interest in any and all property --

                1)    constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offenses described in Counts One and Two, believed to be no less than $21,500.00; and

                2)    any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offense,

        b.    A sum of money equal to the total value of the property described in paragraph 1(a), believed to be no less than $21,500.00.

2.    Pursuant to Title 21, United States Code, Section 853(p), each defendant shall forfeit substitute property, up to the value of the total amount described in paragraph 1, if, as the result of any act or omission of said defendant, the property described in paragraph 1, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to or deposited with a third party; has been placed beyond

- 7 -

1  the jurisdiction of the court; has been substantially diminished
2  in value; or has been commingled with other property which cannot
3  be divided without difficulty.

4      3.   For each count for which more than one defendant is
5  found guilty, each such defendant shall be jointly and severally
6  liable for the entire amount ordered forfeited pursuant to that
7  count.

8

9                              A TRUE BILL

10

11                              "/S/"
                                _____
12                              Foreperson

13
   GEORGE S. CARDONA
14 Acting United States Attorney

15

16 THOMAS P. O'BRIEN
   Assistant United States Attorney
17 Chief, Criminal Division

18

19 JANET C. HUDSON
   Assistant United States Attorney
20 Organized Crime & Terrorism Section

21

22

23

24

25

26

27

28

                              - 8 -